No. 1942.

Second Circuit.

---

KENDRICK, ET AL., v. CARROLL.

---

(April 10, 1926. Opinion and Decree)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Appeal—Par. 625.**

The finding of the trial court on a question of fact will not be disturbed by this court unless manifestly erroneous.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo, Hon. E. P. Mills, Judge.

Action by J. D. Kendrick, et al., against Colon C. Carroll to be recognized as heirs and placed in position of a succession.

There was judgment for defendant and plaintiffs appealed.

Judgment affirmed.

Murff and Mabry, of Shreveport, attorneys for plaintiffs, appellants.

John B. Files, of Shreveport, attorney for defendant, appellee.

## STATEMENT OF THE CASE.

REYNOLDS, J. In this case the plaintiffs, brothers and sister of Mrs. Emma Kendrick Carroll, deceased wife of the defendant, Colon C. Carroll, sue to be recognized as her sole heirs and to be placed in possession of her succession, consisting of an undivided half of all property belonging to the community between her and her husband, the defendant, Colon C. Carroll.

Defendant resisted the demand of the plaintiffs on the ground that his wife, by last will and testament, bequeathed to him all of her property.

The plaintiff on the trial sought to show that the will was a forgery.

On these issues the case was tried and there was judgment sustaining the validity of the will, and the plaintiffs appealed.

## OPINION.

The question to be decided is whether or not the purported will of Mrs. Emma Kendrick Carroll, relied on by defendant in support of his title to the property in controversy, is genuine or a forgery.

There are certain technical issues presented by both plaintiffs and defendant as to the effect that should be given to the judgment of the District Court of Caddo Parish, Louisiana, probating the purported will of Mrs. Emma Kendrick Carroll, but it is not necessary for us to pass on these questions, as the evidence introduced on the merits of the case makes it clear to our mind that the judgment rendered by the lower court is correct.

The evidence on the question of the genuineness of the will is:

Colon C. Carroll testified, pages 12 and 13:

"Q. I will ask you whether or not you are familiar with your wife's handwriting?
"A. Yes, sir, I think that I should be as much so as any one.
"Q. You have often seen her write her name?
"A. Yes, sir.
"Q. I will ask you if that is entirely written, dated and signed by your wife?
"A. Yes, sir.

* * * *

"Q. Who dictated the will, do you know?
"A. Well, she had a form to write the will from, from Mr. Fred Leonard.

* * * *

"Q. When did she write that?
"A. In August, nineteen and ten.

* * * *

"Q. You didn't see her write that?
"A. No, sir, I couldn't say that I seen her write all of it. I seen her write parts of it, and when she finished it, I saw it, of course. I remember the time that she was writing it, but I didn't see her write everything on there. There was no one else on the place except me and her.
"Q. Did you ever show the family that will before it was written?
"A. No, sir, not before it was written.
"Q. Did you ever show the family the will?
"A. Yes, sir."
L. A. Waltern testified, pages 20 and 21.

* * * *

Counsel for defendant now offers in evidence the document marked defendant-B, showing four signatures of Mary E. Carroll, which were taken from the minute book of the Woodman Circle No. 37, Myrtis, of the minutes of date, one signed May 8, 1907; two, May 22, 1910; three, June 6, 1907, and four, August 28, 1907.

"Q. Now, Mr. Waltern, I will ask you

if you recognize those as the genuine signatures of Mrs. Mary E. Carroll?

"A. Yes, sir.

"Q. Now, she signed her name to those documents?

"A. Yes, sir.

"Q. In your presence?

"A. Yes, sir.

"Q. Do you know that she signed those?

"A. Yes, sir; I saw her sign them.

"Q. You saw her sign each one of those?

"A. Yes, sir.

\* \* \* \*

"Q. Mr. Waltern, I will show you the document attached to the petition in proceedings number 33620, entitled 'Succession of Mary Emma Carroll', purporting to be the last will and testament of Mrs. Mary Emma Carroll, and I will ask you to examine that and state whether or not you recognize it as having been wholly dated, written and signed by her? (Handing witness document.)

"A. Yes, sir, I have seen that before; that's her handwriting.

"Q. You have frequently seen her sign documents?

"A. Yes, sir.

"Q. In your opinion, this is entirely written, dated and signed by her?

"A. Yes, sir."

L. H. Baker testified, pages _____.

"Q. Mr. Baker, what is your business?

"A. I am cashier of the City Savings Bank and Trust Company.

"Q. Now, in that capacity do you have to examine signatures on documents, checks and so forth?

"A. Yes, sir, frequently.

\* \* \* \*

"Q. Mr. Baker, I will show you the document attached to the petition in the succession of Mrs. Mary Emma Carroll, 33620, purporting to be the last will and testament of Mrs. Mary Emma Carroll, and I will show you for comparison four signatures which have been testified by witnesses that they had seen her sign her name, and I will ask you to compare the signatures of that document with this will and state whether or not in your opinion they were written by the same party?

(Witness examines will and the four signatures referred to.)

"A. Yes, sir, there would not be any doubt in my mind if I had to pay a check on it.

"Q. Mr. Baker, did you examine the whole document?

"A. No, sir, just the signatures.

"Q. Now I will ask you to examine the whole statement and compare the handwriting and state whether the whole document is wholly written, dated and signed, and what do you say to the signature of that? (Witness compares same.)

"A. Yes, sir, I think that it is the same handwriting, compares the same as the signature, and compares with the 'Carroll' written in this document and the 'Carroll' written in the signature; they are the same.

"Q. How about the rest of it?

"A. The rest looks to be the same handwriting to me."

A. C. Braunig, assistant cashier of the City Savings Bank and Trust Company, testified, in substance, to the same state of facts.

Mrs. Mary Waltern testified, page 37:

"Q. Now, we have cut out four signatures from this book, Mrs. Waltern, by permission of Mr. Waltern, and I will ask you if she signed those in your presence, if you saw her sign them? (Witness examines same.)

"A. Yes, sir, we had the desk there, and she would come to my desk and sign the book there at my desk.

"Q. You both would sign the minutes there, of the meeting?

"A. Yes, sir.

"Q. You were the clerk and she was the guardian?

"A. Yes, sir.

"Q. Mrs. Waltern, having often seen Mrs. Carroll sign her name, I will show you the document attached to proceedings number 33620, succession of Mrs. Mary E. Carroll, purporting to be her last will and testament, and I will ask you to examine that and see in your opinion, whether or not she wrote that document, whether it is entirely written, dated and signed by her? (Witness examines same.)

"A. While, of course, I didn't see her, but to my opinion she did it, seems like she did it; while I'm no expert or anything like that, of course, I know that.

"Q. Judging from what you have seen her write, her handwriting—in your opinion, you would say she wrote that document?

"A. Yes, sir."

Mr. A. T. Kahn, a banker, called as a witness for plaintiff, testified, page 46:

"Q. Would you say that the four signatures on the document marked defendant-B were written by one and the same person?
"A. Yes, sir.
"Q. You say that that is the handwriting of the same person?
"A. Yes, sir.
"Q. Now, compare that with the will and state in your opinion whether the party who wrote those signatures also wrote that will and signed it?   (Witness examines and compares same.)
"A. It looks to me like that is all the same writing."

Mrs. S. A. Hall, Mrs. S. A. Dees, and C. L. Kendrick, plaintiffs, sisters and brother of Mrs. Emma Kendrick Carroll, each testified that in her or his opinion the signature of Mrs. Emma Kendrick Carroll on the purported will is a forgery.

These three witnesses were all directly interested in the result of the suit, and while we are impressed by their testimony that they tried to be fair, yet it is well known that self-interest is difficult to overcome.

"When self the wavering balance shakes, it's rarely right adjusted."

We are convinced that the testimony of the plaintiffs themselves cannot outweigh that of the above mentioned disinterested witnesses.

With all the testimony in the case before him, the District Judge who tried the case and saw the witnesses and heard them testify rendered judgment rejecting plaintiffs' demand. We find his judgment correct.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.